Our next case for this morning is Jeremy Brown v. Thomas Dart, the appeal of Jacqueline Brown. Mr. Flaxman. Thank you, Your Honor. May it please the Court. Back in March of 2012, something happened between Mr. and Mrs. Brown which resulted in the Chicago Police responding to the Brown residents. Thereafter, the Chicago Police officers wrote a report. The Chicago Police Department sent that report to the Sheriff of Cook County, and the Sheriff of Cook County initiated an investigation and did some kind of adverse employment action against Mr. Brown. Mr. Brown has filed a lawsuit claiming that adverse employment action was racially discriminatory against him. In the course of defending the case, the Sheriff wants to depose Mrs. Brown and ask her about the policies of the Sheriff, about her employment with the Sheriff, about what she told the police officers. They also want to ask her about what happened between her and her spouse. What happened between Mr. and Mrs. Brown has nothing whatsoever to do with the adverse employment action. It has nothing to do with that lawsuit. It's just a way of driving a wedge between husband and wife and perhaps persuading the husband to drop the lawsuit rather than putting his wife through the trauma of testifying about what was an unpleasant event that they've worked their way through that happened four years ago that is no longer important to their marriage. So you're making essentially, if I'm understanding you correctly, not just a marital testimonial privilege argument. It sounds to me like you're really making a relevance argument. Well, I'm seeking a qualified privilege which turns on the cost and benefits analysis. And here the information that is sought by the Sheriff about the marital, that would invade the asserted marital testimonial privilege has no relevance whatsoever. Let's start, Mr. Flaxman, with questions to Mrs. Brown about what she told the police officers. We're not asserting a privilege to that. So it's okay to call her to testify about that? What she told the police officers is not privilege. We don't assert it's privilege and if for some reason that's admissible. She's being called to testify against her husband. I understand that the communications wouldn't be privileged, but I understand you to be asserting a broader privilege than that. Yeah, I thought you were asserting the testimonial privilege, and I was just looking at footnote two in your brief in which Mrs. Brown has reserved the right to invoke the marital communications privilege. So I thought you didn't want to testify about anything, including what she told the police or including how long she worked in the Sheriff's Department. The way we view the privilege and the privilege that we're advocating for doesn't reach what she told the police or what medical treatment, if any, she got after that incident. We're seeking the privilege just for the question, did your husband punch you in the nose? That's the extent of what we believe is privilege. What's the difference between that and what she told the police officers? Well, we know what she told the police officers. She told the police officers that I don't want to make a report, I have no interest in signing a complaint, and I want to cooperate with you. Okay. And nobody is asserting a privilege. Well, the only person who can is Mrs. Brown, and she's not asserting a privilege to that. She's asserting a privilege to the question of, did he punch you in the nose? Did he break your nose? Did it hurt? But that's communication. I thought this was just a subpoena to have her deposition taken, and there's a motion to quash the deposition subpoena. It was not my impression that you had checked off, you know, willing to answer questions on the following topics, not willing to answer questions on the other topics. Am I wrong about that? Well, I don't know if there's a form to check that information. No, I don't think there is, actually. That's my problem. If we adopt this privilege, then we may have to provide such a form. Well, but it's like the psychotherapist privilege. You can't ask someone what did you tell the therapist if it's not, if you haven't placed an issue, but the fact that you spent $10,000 on therapy might be relevant and it's not covered by the privilege. It's communication. Yeah, that's where I guess I'm a little confused, Mr. Flaxman, because I had understood we've got a communications privilege that's not in front of us right now. That's correct. Okay, and so I had understood this to be a much broader assertion of a privilege that simply you cannot call me as a witness against my will in a case against my spouse. But my testimony would be adverse to my spouse. If my testimony, if the testimony would be what time did he get up in the morning or does he like to eat Cheerios, that's not adverse. If the question is did he punch you in the nose, that would be adverse. Let me ask you, I haven't seen here any argument that her testimony would pose a risk of criminal liability for Mr. Brown. But I'm trying to think about situations, for example, in which, well, think about the Fifth Amendment self-incrimination privilege as opposed to spousal incrimination, where that privilege can be invoked in civil cases, but the opposing parties are then entitled to an instruction and a permissible adverse inference if that privilege is invoked, right? Yes. Would that be appropriate in this kind of case if we recognize this privilege? Well, I have no interest in the individual trial, but speaking hypothetically, if at trial the district judge said it was relevant to find out what actually happened between Mr. and Mrs. Brown and Mrs. Brown does not testify as she will not testify, the district judge would be in his or her discretion, it would be fine to tell the jury Mrs. Brown has not testified. You could infer from that that her testimony would not help her husband, would harm her husband. But I don't know why at the trial in this case it would ever reach the question of, did he punch you in the nose? Did you punch her in the nose, sir? That had nothing to do with the adverse employment action. Any jury would want to know the answer to that question, right? Well, juries want to know a lot of questions. They want to know, have you ever been arrested before? Have you ever been to the jail before? And we don't, the court doesn't allow the jury to know that stuff, even though everybody wants to know. In false arrest cases, the jury always wants to know, were you convicted? And many judges say that's not relevant to whether there was probable cause to arrest. In this case, and Mrs. Brown is not going to be controlling the outcome of the trial or the way it's conducted, but if the district judge in his wisdom says it's important for the jury to know that because they're curious, and Mr. Brown says, I did not punch her in the nose, and the officers say, well, when we saw her, she was bleeding from the nose and her nose was deformed and she was crying, and Mrs. Brown does not testify, it would be mandatory almost. If I was the judge, I would give that instruction saying, you may infer from the absence of testimony, Mrs. Brown, that he punched her in the nose. Mr. Flaxman, has any appellate court in the United States recognized the privilege you're asking us to recognize? No, and no appellate court, as far as I've been able to determine, has discussed in a civil case whether the privilege should extend or apply in civil cases. There's that First Circuit case saying exactly what I just quoted, and it arises in criminal cases, there are several magistrate judge opinions, there's district judge opinion, there's a law review article which cites several magistrate judge opinions, but there's no principled reason we submit for why the privilege should be limited to criminal cases. Asking Mrs. Brown, did your husband punch you in the nose four years ago, is not going to help her marriage, it's going to harm her marriage. The district judge said, well, there's little reason to believe that it would harm her marriage, but when he wrote that, he wasn't writing about the question of did he punch you in the nose, he was writing, this is the short appendix seven through eight, little reason to believe that recounting what she told the police would not harm the marriage, and that's not what the privilege is for. The privilege is for, she doesn't have to say, he punched me in the nose and he used to be a horrible person, but we've all gotten much better and I don't want to talk about it anymore, it's very sad to talk about how we had a bad marriage and we fixed it up. Some people like to talk about it and some people don't, and Mrs. Brown doesn't want to talk about it. But your underlying case is about pretext, saying he was, his employment action was based not on something alarming maybe, instead it was based on his race. That's what his claim is. Yeah, and I don't see how the other side isn't going to say, well, we had this information and therefore we, I guess you'd say disciplined him. I think that's a question for my opponent to ask. All right, well, you got the case though, that's what I'm saying. Well, I mean, I don't understand, looking at the underlying case, how any of this has anything to do with it, that adverse employment action was allegedly taken against Mr. Brown. It was taken because of these reports which they received and the claim is not that it was pretextual, but that people of a different race, I think he's black and he's comparing himself to white officers who, about whom domestic violence complaints are made, aren't disciplined, there are no adverse employment actions. That has nothing to do with whether he really punched her in the nose. All right, thank you very much, Mr. Flaxman. Mr. Frey. May it please the Court. My name is Kevin Frey. I represent the appellees in the matter. Maybe you should start with the relevance of this testimony, assuming that, as Judge Mannion just said, Mr. Brown has brought this case, saying that he was impermissibly, a bunch of unfavorable employment actions happened because of his race. The Sheriff's Department says, no, we got this police report. We have an anti-domestic violence policy or whatever they say about that. But it's not clear what this testimony is going to do. They're going to say they took the action because they got the police report. It's not what Mrs. Brown said. No, I agree. That would be a theory of our case. So why does Mrs. Brown have to get dragged into this at all? Because the plaintiff has dragged her into this. The plaintiff, in his complaint, has alleged that the incident did not happen. And because it's discovery, and it's a theory that the plaintiff indicated in his complaint that he may be pursuing, in addition, throughout discovery, there's been no indication that he's backing off of that position. It would be a disservice to my clients, and a disservice to the athletes if they're not able to depose witnesses and ask witnesses questions based upon allegations that are made in the plaintiff's complaint. So you're anticipating that Mr. Brown is going to get up there and stand in the trial and say nothing ever happened on March 1 and 2. The police just made this whole thing up. Based upon what he's alleged in his complaint and what has taken place in discovery so far, yes. So why aren't the police the people to depose about fabricating a report of domestic violence? Well, that would be, I mean, I think that's a question for the plaintiff's attorney, not Mr. Flaxman. No, it's not Mr. Flaxman. But the plaintiff's attorney. Why haven't they deposed the police officers? So you have to then be assuming that this is going to come in, as far as I can tell, under 613B, right? Yes. Contradiction evidence? Yes, and it would be, again, and this isn't, we wouldn't be raising this, obviously. But only if Mr. Brown opens the door. Yes, and I believe that he's opened the door based on his complaint and based upon his deposition testimony that this is a theory he's going to set forth, and discovery being broad. So that's different from the theory everybody commits domestic violence, but only the African-Americans are punished for it. That's what I heard Mr. Flaxman say a minute ago, that there was a disparate reaction to domestic violence. Well, I believe that Mr., or the plaintiff, Mr. Brown, is going to relate a couple of different theories, one of which is I was treated differently than white employees at the sheriff's office who were either convicted of domestic violence or alleged to have committed domestic violence. But I also believe he's going to set forth the theory that this never happened. The sheriff shouldn't have done this to me because it just didn't happen. And so if we have a trial, if he gets up and testifies this didn't happen and we have the police officers testify, well, this is what was reported to us from Mrs. Brown, but we didn't actually witness the incident. A jury may want to know, well, what does Mrs. Brown have to say? So the criminal side of your office could not seek this testimony, right? Well, that's a good question. If you were trying to prosecute Mr. Brown for battery. Well, I would argue that I don't know the state law. I've only, in conjunction with this case, I've only looked at the federal law, obviously. In the federal law. If it were on a federal reservation, the U.S. Attorney's Office could not seek this evidence. So why should we draw the criminal-civil distinction? Because under the Supreme Court's decision in Wyatt, which only applied to Man Act cases, however, this court's decision in Van Druin, and then it seemed to be reiterated in Ryan, talked about how the privilege is best suited to be raised by a testifying spouse who is neither the victim or an accomplice or had a role in that. Well, look, I mean, you have to back up. I mean, if there's an answer to why you would limit this privilege to criminal or people like to say closely tethered to criminal or whatever that means, but to criminal cases, essentially. You have to say, at a broader level, the Supreme Court doesn't like evidentiary privileges that keep relevant evidence away from the trier of fact. We really try to get all of the relevant evidence in, so you look carefully at the scope of privileges, and then you would have to further say, and I think it's Hampton, that construing this privilege narrowly is enough. I mean, for the most part, the marital privileges are not going to make or break a marriage one way or the other. So that would be the argument, I think. And it gets down to how important the privilege is. We're in the common law area under 501. The Congress, in its wisdom, decided not to have federal privilege laws. 505 would have kept this out, though. That's correct. It would have. And I think if you look at the evolution of the privilege throughout the years, it's been narrowed by the Supreme Court. It's gone from the common law where neither spouse could testify for or against each other to spouses could testify if they were in agreement for each other, and then ultimately in Trammell, the Supreme Court said it only applies to the or it only can be raised by the testifying spouse. So based on that, I think another important point that the Supreme Court has made, especially in Hawkins, it talks about life or liberty, that the privilege is important for the sanctity of a marriage where life or liberty is at stake. And in a case such as this one where it's a property interest at stake, it's not life or liberty. And that's why we've argued in our brief that the privilege should not be extended to the civil cases. If you do not have any further questions. Apparently not. Okay. I would ask that you affirm the decision of the district court. Thank you. Your time had run out, Mr. Flaxman. I will give you a minute if you would like to. All right. Thank you. Thank you very much. We will take the case under advice.